In The

# United States Court of Appeals
### For The Federal Circuit

## ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC,

*Plaintiff – Appellee,*

**v.**

## GUARDIAN PROTECTION SERVICES, INC., ALARM SECURITY GROUP, LLC, CENTRAL SECURITY GROUP - NATIONWIDE, INC., GUARDIAN ALARM COMPANY, GUARDIAN OF GEORGIA, INC., dba Ackerman Security Systems, ICON SECURITY SYSTEMS, INC., MONITRONICS INTERNATIONAL, INC., SLOMIN'S, INC.,

*Defendants,*

## ADS SECURITY, L.P.,

*Defendant – Appellant.*

### APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS IN CASE NO. 2:15-CV-01431-JRG-RSP, JUDGE J. RODNEY GILSTRAP.

────────────

## BRIEF OF APPELLEE

────────────

**Jay B. Johnson**
**KIZZIA JOHNSON PLLC**
**1910 Pacific Avenue, Suite 13000**
**Dallas, Texas 75201**
**(214) 451-0164 (Telephone)**
**(214) 451-0165 (Facsimile)**
**jay@kjpllc.com**

*Counsel for Appellee*

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellee Rothschild Connected Devices, LLC, hereby certifies the following:

1.     The full name of every party or amicus represented by me is:

Rothschild Connected Devices Innovations, LLC.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

The real parties in interest are named in the caption.

3.     All parent corporations and any publicly held companies that own 10 percent of more of the stock of the party or amicus curiae represented by me are:

No publicly held company owns ten percent or more stock in Rothschild Connected Devices Innovations, LLC.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

Kizzia Johnson PLLC
Jay Johnson

Dated: December 5, 2016          /s/ Jay Johnson
                                 Jay Johnson
                                 Counsel for Plaintiff-Appellee
                                 Rothschild Connected Devices Innovations,
                                 LLC

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTEREST ..................................................................... i

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ...................................................................... iv

STATEMENT OF RELATED CASES ..................................................... vii

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF THE ISSUE ................................................................. 1

STATEMENT OF THE CASE .................................................................. 2

SUMMARY OF THE ARGUMENT ........................................................ 4

ARGUMENT ............................................................................................. 7

    I.     Standard of Review .................................................................. 7

    II.    The District Court Properly Considered All Aspects of the Case and Determined That There is Nothing Exceptional About This Case ........................................................................................ 8

    III.   ADS (Both at the District Court and in this Appeal) Attempts to Conduct a Prohibited Mini-trial on Infringement and Validity .......... 12

    IV.   ADS's Arguments Concerning Claim Scope are Irrelevant to the Issues On Appeal and RCDI's Counter Position Does Not Render this Case Exceptional ............................................... 18

    V.    ADS Engaged in Extortionist Behavior ................................. 22

    VI.   The District Court's Decision was not an Abuse of Discretion and was Proper Under *Octane Fitness* ................................. 24

CONCLUSION .......................................................................................................30

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Amazon.com, Inc. v. Barnesandnoble.com*,
  239 F.3d 1343 (Fed. Cir. 2001) ...................................................................8

*eDekka LLC v. 3balls.com, Inc.*,
  Case No. 2:15-cv-541, Dkt. No. 133,
  2015 U.S. Dist. LEXIS 168610 (E.D. Tex. Dec. 17, 2015) .................8, 9, 10

*Eltech Sys. Corp. v. PPG Indus*.,
  903 F.2d 805 (Fed. Cir. 1990) ...................................................................15

*Fogerty v. Fantasy, Inc*.,
  510 U.S. 517 (1994).........................................................................24, 25, 28

*Forcillo v. Lemond Fitness, Inc*.,
  168 F. App'x 429 (Fed. Cir. 2006) ...............................................................16

*Highmark Inc. v Allcare Health Mgmt. Sys. Inc.*,
  134 S. Ct. 1744 (2014)..................................................................................7

*ICON Health & Fitness, Inc. v. Octane Fitness, LLC*,
  576 F. App'x 1002 (Fed. Cir. 2014)...............................................................8

*Liebel-Flarsheim Co. v. Medrad Inc*.,
  358 F.3d 898, 69 USPQ2d 1801 (Fed. Cir. 2004).......................................21

*MacroSolve, Inc. v. Antenna Software, Inc*.,
  Case No. 6:11-cv-287, Dkt. No. 573 (E.D. Tex. Oct. 16, 2014)...................13

*Mfg., Inc. v. Dutailier Int'l, Inc.*,
  393 F.3d 1378 (Fed. Cir. 2005) ...................................................................25

*Microsoft Corp. v. i4i Limited Partnership et al*.,
  131 S. Ct. 2238 (2011)..................................................................................16

*Nazomi Communications, Inc. v. ARM Holdings, PLC*,
    403 F.3d 1364 (Fed. Cir. 2005) ...................................................22

*Octane Fitness LLC v. ICON Health & Fitness Inc.*,
    134 S. Ct. 1749 (2014)..........................................................*passim*

*Park-In-Theatres, Inc. v. Perkins*,
    190 F.2d 137 (9th Cir. 1951) ................................................*passim*

*Stragent, LLC v. Intel Corp.*,
    No. 6:11-CV-421, 2014 WL 6756304.....................................*passim*

*Superguide Corp. v. DirecTV Enterprises, Inc.*,
    358 F.3d 870, 69 USPQ2d 1865 (Fed. Cir. 2004).......................21

*Tate Access Floors v. Interface Architectural Res.*,
    279 F.3d 1357 (Fed. Cir. 2002) ..................................................22

*Teleflex, Inc. v. Ficosa North America Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ..................................................20

*The Walt Disney Company*,
    346 F.3d 1082, 68 USPQ2d 1516 (Fed. Cir. 2003).....................19

*Wiley v. RockTenn CP, LLC*,
    No. 4:12-cv-00226 (E.D. Ark.), Order at 8, Sept. 30, 2014 .........22

## STATUTES

28 U.S.C. § 1295(a) ......................................................................1

28 U.S.C. § 1331 ...........................................................................1

28 U.S.C. § 1338(a) ......................................................................1

28 U.S.C. § 2107(a) ......................................................................1

35 U.S.C. § 70 .............................................................................25

35 U.S.C. § 282 ...........................................................................21

## RULES

Fed. R. App. P. 4 ...................................................................................................1

Fed. R. Civ. P. 11 .............................................................................................*passim*

## STATEMENT OF RELATED CASES

No other appeal from this civil action was previously before this Court or any other court of appeals.

The following currently pending cases are related to this civil action:

Rothschild Connected Devices Innovations, LLC
v. Coca Cola Company
Docket No. 1-16-cv-01241
Northern District of Georgia (transferred from Southern District of Florida)

Petition for Inter Partes Review by RPX Corporation
IPR2016-00443
PTAB

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). The district court denied ADS Security, L.P.'s ("ADS) motion for attorneys' fees in a Memorandum Opinion and Order issued July 18, 2016.[1]  On August 17, 2016, ADS appealed this decision under 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure 4.[2]  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1295(a) because the appeal is from a final decision of a district court in an action where jurisdiction was based on 28 U.S.C. § 1338(a).

## STATEMENT OF THE ISSUE

1.     Whether the district court's decision to deny ADS' motion for attorneys' fees was an abuse of discretion.

---

[1] (Appx16-22).
[2] (Appx1169).

## STATEMENT OF THE CASE

Rothschild Connected Devices Innovations, LLC ("RCDI") filed its Complaint against ADS on August 26, 2015.[3]  On October 28, 2015, this case was consolidated with others in the lead case.[4]  On or about November 5, 2015, ADS' counsel contacted RCDI's counsel to request a 15-day extension to respond to the Complaint.[5]  ADS's counsel also indicated that ADS was putting together a counteroffer and needed additional time because the infringement allegations and accused products involved indemnitors and suppliers and they were trying to sort out those issues.[6]  On November 19, 2015, ADS filed its Answer and Counterclaims.[7]

On November 19, 2015, ADS's counsel contacted RCDI's counsel threatening to file a Rule 11 motion and a Motion for Judgment on the Pleadings ("Alice Motion") if RCDI did not dismiss the lawsuit and pay ADS's then-alleged attorneys' fees of $43,330.[8]  RCDI's counsel responded that RCDI would not accept a counteroffer that involved RCDI paying ADS's attorneys' fees.[9]  On

---

[3] (Appx72-79).
[4] (Appx82-83).
[5] (Appx708).
[6] (Appx708).
[7] (Appx84-92).
[8] (Appx704).
[9] (Appx855).

November 24, 2015, ADS filed its Alice Motion.[10] On December 28, 2015, ADS's counsel served RCDI's Counsel with a Safe Harbor Notice of a Rule 11 motion.[11] Within the safe harbor period, RCDI withdrew its Complaint against ADS.[12]

On January 22, 2016, ADS filed an opposition to RCDI's motion to dismiss and a cross-motion for attorneys' fees.[13] RCDI filed an opposition to ADS's cross motion.[14] ADS filed a reply in support of its cross-motion.[15] RCDI filed a sur-reply.[16] On March 18, 2016, the district court held a hearing on RCDI's motion to dismiss and ADS's cross-motion for attorneys' fees.[17] After the hearing, RCDI filed an amended motion to dismiss. The amended motion to dismiss was unopposed and was granted.[18] On July 18, 2016, the district court entered a Memorandum Opinion and Order denying ADS's cross-motion for attorneys' fees.[19] ADS filed its appeal to this Court.[20]

---

[10] (Appx93-110).
[11] (Appx270).
[12] (Appx245-248).
[13] (Appx249).
[14] (Appx686).
[15] (Appx727).
[16] (Appx1105).
[17] (Appx1114).
[18] (Appx1167).
[19] (Appx16-22).
[20] (Appx1169).

## SUMMARY OF THE ARGUMENT

ADS's district court bid for attorneys' fees was nothing more than an attempt to shake down RCDI for money. Now ADS appeals to this Court in an effort to roll the dice and salvage its failed argument at the district court level.

RCDI filed its Complaint in good faith after an acceptable and adequate pre-suit investigation. RCDI has committed no acts that could be considered as making this an "exceptional case." The district court held that there is nothing exceptional about this case,[21] RCDI's litigation position was reasonable,[22] and RCDI's position on validity was plausible.[23] ADS is seeking fees based on legal arguments that were never raised and/or never decided in court. RCDI withdrew its complaint shortly after ADS answered and served a Rule 11 motion.[24]

ADS's reasons for requesting attorneys' fees are, basically, that (1) RCDI asserted an unreasonable claim construction; (2) claim 1 of the patent-in-suit is invalid under Section 101 and in view of prior art; (3) RCDI sought to dismiss after being threatened with a Rule 11 motion; and (4) RCDI has enforced the patent-in-suit against a large number of defendants in varying industries.

With respect to claim construction and validity, these are issues that are almost always in dispute in any patent infringement lawsuit. The courts have

---

[21] (Appx22).
[22] (Appx22).
[23] (Appx22).
[24] (Appx245-248).

vehicles for deciding these issues including claim construction hearings and motions for summary judgement. The district court case was dismissed long before the claim construction hearing and ADS never filed a motion for summary judgment concerning claim construction or validity in view of the prior art. Moreover, validity under Section 101 was the only validity issue ever submitted to the court by ADS. That issue was fully briefed by the parties and the district court, although never deciding the issue in the short time the case was pending, found that RCDI presented plausible arguments as to why the challenged claims of the patent-in-suit were valid under Section 101.[25] In connection with its attorneys' fees motion, ADS also cited to various pieces of prior art and argued that the patent-in-suit is invalid. At the time, however, nobody acting on RCDI's behalf had made a determination that would lead RCDI to believe that the prior art raised by ADS rendered the patent-in-suit invalid. And, no court or other authority had at the time, or has since, made that determination. In its appeal, ADS again claims that RCDI willingly ignored the prior art references that ADS forwarded. Yet, as was explained at the district court, RCDI had not formally analyzed the references to make a determination as to invalidity.[26] RCDI had, however, reviewed the references on a preliminary basis and reached no conclusion that they invalidated

the patent-in-suit.[27]  Moreover, ADS never raised validity under Section 102 and 103 with the court.  While it could have, it never filed a motion for summary judgment on this issue.

Regarding claim construction, ADS's argument centers on the meaning of "product."  ADS believes that because some embodiments in the '090 Patent specification include liquids and consumable products, that those limitations should be read into claim 1.  There is nothing, however, that is unreasonable about RCDI's position that "product" should be given its plain and ordinary meaning, which would encompass non-consumable products as well as consumable products.  The intrinsic record does not include an express definition of "product."  The patentee never expressly disclaimed non-consumable products.  And, the additional elements of certain dependent claims, coupled with the doctrine of claim differentiation, dictate that the term "product" in claim 1 of the '090 Patent is not limited to liquids and consumable products.

Regarding ADS's threat of a Rule 11 motion, that threat was explicitly tied to a demand that RCDI pay ADS's attorneys' fees.  It appeared to RCDI that the threat was simply a vehicle aimed at extracting some sort of payment.  RCDI believed that the district court would deny ADS's proposed Rule 11 motion.

---

[27] (Appx1116) (page 8; lines 16-18).

Nevertheless, ADS's behavior appeared overly aggressive and reckless, and RCDI chose to dismiss the lawsuit rather than deal with a reckless defendant.

In short, there is nothing out of the ordinary about this case, especially compared to other cases brought by non-practicing entities. None of the factors supporting a fee award exists in this lawsuit, and the case should not be considered "exceptional."

As for its appeal, ADS has shown nothing in the record that would indicate the district court's decision to deny ADS's motion for attorneys' fees was an abuse of discretion. The vast majority of ADS's appeal brief is dedicated to rehashing the issues it raised in the district court. Those issues were thoroughly and thoughtfully considered by the district court and ADS's attorneys' fees were properly denied.

## ARGUMENT

I.    Standard of Review

A district court's decision to deny attorneys' fees is reviewable under an "abuse of discretion" standard.[28]  Under this standard, a district court's decision should be affirmed unless the district court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or

---

[28] *Highmark Inc. v Allcare Health Mgmt. Sys. Inc.*, 134 S. Ct. 1744, 1747 (2014).

clearly erroneous factual findings.[29] Under *Octane Fitness*, district courts are given

considerable discretion in awarding fees.[30] Even if a case is exceptional, a court is

given discretion on whether to award any amount of fees.[31]

II. The District Court Properly Considered All Aspects of the Case and Determined That There is Nothing Exceptional About This Case

ADS's attorneys' fees motion was a "kitchen sink" approach to recovering

its fees. There is nothing about this case, however, that can be considered

"exceptional." Defendant's demand was, and still is, based on a claim construction

argument, an invalidity argument, RCDI's motion to dismiss after being wrongly

served with a Rule 11 notice, and an erroneous comparison to an Eastern District

of Texas decision in *eDekka*.[32] Noticeably absent, however, are any of the factors

that district courts have previously relied upon including bad faith litigation,

objectively unreasonable positions, inequitable conduct before the PTO, subjective

bad faith, or exceptionally meritless claims.

---

[29] *Amazon.com, Inc. v. Barnesandnoble.com*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

[30] *Octane Fitness LLC v. ICON Health & Fitness Inc.*, 134 S. Ct. 1749, 1756 (2014).

[31] See *ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014) (on remand) (noting Supreme Court's Octane decision "did not . . . revoke the discretion of a district court to deny fee awards even in exceptional cases").

[32] *eDekka LLC v. 3balls.com, Inc.*, Case No. 2:15-cv-541, Dkt. No. 133 at 4, 2015 U.S. Dist. LEXIS 168610 at *13 (E.D. Tex. Dec. 17, 2015).

RCDI brought its claims against ADS in good faith.[33]   RCDI's counsel reviewed publically-available information regarding ADS's products and made a determination that there was a good faith argument that the accused products infringed at least claim 1 of the patent-in-suit.[34]   RCDI continues to believe, in good faith, that the patent-in-suit is valid and is being infringed by ADS.[35]   RCDI considered ADS's Rule 11 motion and determined that it should not be granted.[36] However, because ADS and its counsel appeared to be engaging in questionable litigation tactics by demanding fees in connection with its Rule 11 threat, Plaintiff decided to withdraw its Complaint.[37]   Simply because RCDI withdrew its Complaint, given ADS's aggressive and questionable behavior, does not indicate that RCDI took an objectively unreasonable position in filing its complaint in the first instance.

In its motion at the district court, ADS cited the *eDekka* case and attempted to draw parallels between that case and the present lawsuit.  This lawsuit, however, is distinguishable from the *eDekka* case.  First, the *eDekka* plaintiff filed over 200 lawsuits.   In this case, RCDI filed 57 lawsuits, all of which have now been

---

[33] (Appx693).
[34] (Appx693)
[35] (Appx693).
[36] (Appx693).
[37] (Appx247).

resolved. RCDI also notes that at least 15 of those cases were filed after the consolidated case that included the ADS litigation.

Further, there has been nothing about RCDI's conduct that is on par with the aggressiveness in the *eDekka* case. In the *eDekka* ruling on attorneys' fees, the court focused on *eDekka's* conduct at, and shortly prior to, a hearing on Section 101. In this lawsuit, however, there never was a Section 101 hearing. And, RCDI did not extended any extraordinarily low offers to numerous defendants just days prior to a Section 101 hearing, as was the case in *eDekka*. It is absolutely true that RCDI extended early settlement proposals to most defendants and negotiated early settlements with many of those defendants. This is common in multi-defendant cases, however, and does not make this case exceptional.

With respect to the Section 101 issue, RCDI notes that ADS was the only defendant to have filed a Section 101 motion and that, unlike the *eDekka* case, no other defendants joined in that motion. The Section 101 issue was fully briefed and does not need to be repeated here. However, it is clear that RCDI's Section 101 position in this lawsuit is far different from the plaintiff's position in the *eDekka* case. The district court determined as such when it found that "Plaintiff's Response (Dkt. No. 35) and Sur-Reply (Dkt. No. 54) to Defendant's Rule 12(c) Motion recite non-conclusory and facially plausible arguments supporting patent

eligibility.[38]  The district court also found that RCDI's litigation conduct and pre-suit conduct were both reasonable.[39]  While addressed in greater detail below, the district court determined that RCDI presented plausible argument in defense of the Section 101 issue and that, even in the face of Section 102 and 103 references raised by ADS, the patent-in-suit was entitled to a presumption of validity, especially when ADS never filed a motion for summary judgment of invalidity based on those references.[40]

As to RCDI's pre-suit conduct, the district court found that ADS's arguments were untenable.  ADS argued that a pre-suit investigation would have led RCDI to determine that the patent-in-suit was invalid either under Section 101, or under Section 102 and 103 in view of prior art references raised by ADS.[41]  The district court, however, noted that the Section 101 issue would have required an impermissible "mini trial."[42]  And, regarding the alleged prior art references, the district court noted that RCDI only knew of one of the references at the time the lawsuit was filed against ADS.[43]  Moreover, the district court noted that ADS could not explain why a pre-suit investigation would indicate that the patent-in-suit

---

[38] (Appx19).
[39] (Appx19, Appx20, Appx22).
[40] (Appx19-20).
[41] (Appx18).
[42] (Appx19-20).
[43] (Appx20).

was invalid in view of the references, especially given the presumption of validity.[44]

In short, the district court reviewed all aspects of the litigation, including RCDI's pre-suit investigation and ADS's arguments concerning validity, and determined that there was nothing unreasonable about RCDI's conduct and there was nothing "exceptional" about the case. After weighing the arguments and parties' conduct, the district court declined to exercise its discretion to award attorney's fees.

III.  ADS (Both at the District Court and in this Appeal) Attempts to Conduct a Prohibited Mini-trial on Infringement and Validity.

ADS contends that the district court abused its discretion because it should have determined that the underlying case was exceptional and that RCDI's litigating position was objectively unreasonable. The sole basis for these conclusions is that RCDI should have known the patent was invalid. ADS dedicates eleven pages of argument to rehashing its position on Section 101.[45] ADS devotes another ten pages of argument to restating its invalidity arguments under Sections 102 and 103.[46]

The district court properly concluded that validity matters never raised to the court are irrelevant. As previously stated, RCDI responded to ADS's invalidity

---

[44] (Appx20).
[45] See Appellant's Brief, at 18-28.
[46] See Appellant's Brief, at 28-37.

argument based on Section 101. There is nothing exceptional about RCDI taking a contrary position regarding Section 101. And, the district court found that RCDI's response included plausible arguments as to why the patent-in-suit is valid in view of Section 101.[47] Moreover, ADS's position concerning the merits of its Section 101 both at the district court and in its appeal would require a "mini trial" that the district court found to be impermissible.[48] The district court noted that "for a case dismissed before trial to be designated exceptional, evidence of the frivolity of the claims must be reasonably clear without requiring a 'mini-trial' on the merits for attorneys' fees purposes."[49] ADS's arguments on appeal regarding Section 101 are nothing more than a repeat of the same arguments it made in the district court, and which the district court properly rejected. The district court fully and properly considered this argument under applicable case law and, therefore, did not abuse its discretion.

Likewise, ADS is simply repeating its district court arguments regarding prior art under Sections 102 and 103. As with the Section 101 issue, the district court fully considered ADS's arguments under applicable case law and found them

---

[47] (Appx19).

[48] (Appx19-20).

[49] (Appx19) (citing *MacroSolve, Inc. v. Antenna Software, Inc.*, Case No. 6:11-cv-287, Dkt. No. 573 at 5 (E.D. Tex. Oct. 16, 2014), reconsideration denied, Dkt. No. 578, aff'd 637 Fed. App'x. 591 (Fed. Cir. 2016), cert. denied, 2016 U.S. LEXIS 3904 (U.S. June 13, 2016).

to be unpersuasive.[50] ADS takes issue with the district court's determination that determining validity under Sections 102 and 103 required an impermissible mini trial. ADS states that the district court erred because the district court stated it could not conduct a mini trial, even if it wanted to, because the issue had not been briefed.[51] ADS then cites case law for the proposition that claim construction is not necessary to make a determination as to validity and infringement.[52] RCDI respectfully submits that the "issue" that the district court noted had not been briefed was the issue of invalidity – not the issue of claim construction. While it may be true that claim construction is not necessary to make a determination as to validity, the validity issues under sections 102 and 103 in this case were never briefed. ADS never filed a motion for summary judgment on this issue and did not otherwise raise this issue before the court during the short course of the litigation.[53] The district court did, however, fully consider ADS's arguments regarding prior art references and noted that of the fourteen references cited by ADS in its attorneys' fees motion, only one was made available to RCDI pre-suit.[54] And, that reference was provided by a third party.[55] ADS provided three more references shortly

---

[50] (Appx20).
[51] *See* Appellant's Brief, at 29-30.
[52] See Appellant's Brief, at 29-30.
[53] (Appx19-20).
[54] (Appx20).
[55] (Appx20).

before serving its Rule 11 motion.[56]  The remaining prior art references cited by ADS were provided with the service of its Rule 11 motion or thereafter.[57]  There is no explanation from ADS as to how the remaining prior art references could possibly be relevant given that RCDI withdrew its complaint within the Rule 11 safe harbor period.

ADS attempts to manufacture "unreasonableness" by arguing that RCDI willfully ignored the prior art.  In making its argument, ADS continues to overlook the presumption of validity and seeks to create a new standard of law.  ADS claims that RCDI engaged in "studied ignorance" and cites *Eltech Sys. Corp. v. PPG Indus.*, 903 F.2d 805, 810 (Fed. Cir. 1990).  The cited *Eltech* decision, however, had nothing to do with patent validity and was, instead, focused solely on the issue of infringement.  ADS has never set forth an argument that it does not infringe, other than to say it does not infringe if the claims are construed the way it wants them to be construed.  In this regard, ADS's own argument highlights why claim construction was needed in this particular case, as well as the fact that RCDI met its burden in filing the lawsuit in the first instance.

Almost all of ADS's briefing, both at the district court and on appeal, centers on invalidity arguments.  But, ADS fails to acknowledge the axiomatic principle that a patent is presumed valid until proven otherwise by clear and convincing

---

[56] (Appx19).
[57] (Appx19-20).

evidence.[58]   And, in the judicial system under which we operate, that proof is presented during the course of litigation, either in a trial or in a motion for summary judgment.  The district court case was short-lived and never came close to trial.  And, ADS chose not to file a motion for summary judgment on invalidity. Rather, ADS sought to circumvent the judicial system and espouse a standard by which it can proffer allegedly invalidating prior art and thereby require a defendant to pay its attorneys' fees.  Moreover, ADS sought this ruling in a lawsuit where RCDI had drawn no conclusion that any of the prior art raised invalidated the patent-in-suit.  ADS's position would wrongfully place the burden of proving that a patent is valid on a plaintiff.  This is not the standard.

This Court has previously considered fee motions in the context of validity challenges and has determined that merely because a challenge to validity exists, a case is not exceptional, especially when the court has not decided the issue of validity.  In *Forcillo v Lemond Fitness, Inc.*, for example, this Court held that a district court declining to conduct a bench trial on the issue of inequitable conduct, and thus declining to award fees, did not abuse its discretion.[59]   And, in that case, unlike here, the defendant had at least filed a motion for summary judgment on the validity issue.  Moreover, this Court has also recognized that even a finding of

---

[58] *Microsoft Corp. v. i4i Limited Partnership et al.*, 131 S. Ct. 2238 (2011).
[59] *Forcillo v. Lemond Fitness, Inc.*, 168 F. App'x 429, 431 (Fed. Cir. 2006).

invalidity at the district court level would not necessarily render the case exceptional.[60]

RCDI had, and still has, a good faith belief that the patent-in-suit is valid and is vigorously defending the patent-in-suit in response to an Inter Partes Review petition filed by RPX Corporation.[61] Plaintiff has retained counsel and is currently investing substantial resources and money to defend the patent-in-suit against the IPR petition.[62] This contradicts ADS's conclusion that RCDI has formed any belief that the patent-in-suit is invalid. ADS continues to quote RCDI's and its counsel's declarations for the proposition that RCDI ignored the prior art.[63] As was explained during the hearing on ADS's fee motion, however, "[w]hat we said was we had not analyzed the prior art references to make a determination regarding invalidity. We did take a look at the references, however, on a preliminary basis and reached no conclusion that they invalidated the patent."[64] The district court properly considered this and the other circumstances surrounding ADS's prior art argument and rejected it.[65] Again, the district court's decision on this issue complied with *Octane Fitness* and other case law and cannot be said to be an abuse of discretion.

---

[60] *Id.* at 430.
[61] (Appx19-20).
[62] (Appx1113).
[63] (Appx1113).
[64] (Appx1116) (page 8, 16-18).
[65] (Appx22).

IV.    ADS's Arguments Concerning Claim Scope are Irrelevant to the Issues On Appeal and RCDI's Counter Position Does Not Render this Case Exceptional

ADS devotes an entire section of its appeal to attempting to show that the prosecution history limits the breadth of claim 1.[66]  In connection with its argument, ADS continues to attempt to discredit the patent-in-suit by quoting from clearly biased sources.[67]  Yet, ADS fails to explain why its arguments concerning claim scope have anything to do with the issues on appeal.

ADS's patent "bashing" is irrelevant, objectively suspect, and has nothing to do with the issues it raises on appeal.  ADS's name calling does not justify a finding that ADS is the more reasonable party or that RCDI acted unreasonably. As noted by the district court,

> ADS also belabors, both in its communications with RCDI and in its filings before this Court, the ignominious titles bestowed on the '090 Patent by several websites and blogs. See, e.g., (Dkt No. 62 at 9–10). It goes without saying that a third party's decision to award "Stupid Patent of the Month" to the '090 Patent is not binding or persuasive legal authority. When deciding a motion under § 285 the relative reasonableness of the parties' conduct is undisputedly paramount. ADS's resort to name-calling does not commend it as the more reasonable party.[68]

Regarding ADS's marginally more substantive argument on claim construction and claim scope, ADS has never advanced an argument as to why its

---

[66] *See* Appellant's Brief, at 2-7.
[67] *See* Appellant's Brief, at 7-8.
[68] (Appx21) (note 5).

18

products do not infringe under a plain and ordinary interpretation of claim 1 of the patent-in-suit. Rather, ADS's response is that there is no infringement because claim 1 of the patent-in-suit can only relate to configurations of liquid formulas or dispensed products. To be clear, the specification of the '090 Patent discloses several examples of customized products that are liquids and/or other consumables. The specification does not, however, expressly define "product" as a consumable, or a liquid or dispensable item. Rather, the specification states that "[i]t is to be understood that the present disclosure may be implemented in various forms of hardware, software, firmware, special purpose processors, or a combination thereof."[69] Given the lack of any express definition of "product" in the intrinsic record, the term "product" must be given its plain and ordinary meaning, which could include non-consumable products as well as consumable products.[70]

Moreover, claims depending from claim 1, such as claims 2 and 3 for example, include limitations that do specify additional requirements of the "product." Claim 2 recites that the "product preference is a formulation including a predetermined amount of at least one element."[71] And, claim 3 further recites

---

[69] (Appx695).

[70] See, e.g., *The Walt Disney Company*, 346 F.3d 1082, 1092, 68 USPQ2d 1516, 1524 (Fed. Cir. 2003) (Since there was no express definition given for the term "URL" in the specification, the term should be given its broadest reasonable interpretation consistent with the intrinsic record and take on the ordinary and customary meaning attributed to it by those of ordinary skill in the art…).

[71] (Appx695).

that "the at least one element is a fluid, a solid, or any combination thereof."[72] Arguably, these additional limitations could support an argument that the "product" recited in these dependent claims is a formulation or something to be mixed, as ADS contends. However, those elements are in dependent claims and not base claim 1. The doctrine of claim differentiation indicates that the term "product," as used in claim 1 of the '090 Patent, is not limited to a liquid or dispensed, consumable product.

Further, with respect to the definition of "product" in claim 1 of the '090 Patent, there are "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."[73] The ordinary meaning of "product" is not limited to only the types of products ADS contends.

ADS's argument for limiting the meaning of the word "product" is an impermissible attempt to read limitations from the specification (and from dependent claims) into claim 1. "Though understanding the claim language may be aided by explanations contained in the written description, it is important not to import into a claim limitations that are not part of the claim. For example, a

---

[72] (Appx695).

[73] See, e.g., *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) ("Absent an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning.").

particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment."[74]

At a minimum, whether the term "product" should be given its plain and ordinary meaning is debatable. There is nothing objectively unreasonable about Plaintiff taking a position that "product," as used in the patent-in-suit, encompasses non-consumable products such as those sold by ADS.

ADS seems to suggest that because RCDI sued defendants in a variety of industry segments, it should have known that the patent-in-suit could not withstand a validity challenge. Or, stated another way, if RCDI survived a validity challenge, there is no way its patent could read on the various products alleged to infringe in the complaints it filed. First, this argument has nothing to do with the issues on appeal. Second, as the district court noted,

> Patents are presumed valid under 35 U.S.C. § 282, but Defendant argues the '090 Patent is anticipated because "[t]he prior art is rife with disclosures of systems that Plaintiff is accusing of infringement, including remotely configurable thermostats, coffeemakers, cameras, lighting apparatuses, alarm systems, and a host of other devices." (Dkt. No. 59 at 15). To the extent this statement is representative of Defendant's invalidity theory under § 102, it is a theory the Federal Circuit has consistently rejected: "practicing the prior art is irrelevant; it is the presence of the prior art and its relationship to the claim

---

[74] *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875, 69 USPQ2d 1865, 1868 (Fed. Cir. 2004); see also *Liebel-Flarsheim Co. v. Medrad Inc.*, 358 F.3d 898, 906, 69 USPQ2d 1801, 1807 (Fed. Cir. 2004) (discussing recent cases wherein the court expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment).

language that matters for invalidity." Nothing in ADS's Motion constitutes "reasonably clear" evidence of the frivolity of RCDI's claims.[75]

The district court properly considered this argument and rejected it. There is nothing about RCDI suing in different industry segments that makes its case against ADS unreasonable. And there is nothing about this issue that supports a conclusion that the district court abused its discretion.

V.    ADS Engaged in Extortionist Behavior

While it is unclear to what extent the district court considered ADS's behavior, it bears repeating here. Before serving its Rule 11 safe harbor notice, ADS's counsel threatened RCDI's counsel with the filing of a Rule 11 motion and a § 101 motion and explicitly tied that threat to a demand that RCDI pay ADS's attorneys' fees.[76] RCDI submits that this conduct in itself is questionable and suggests an improper use of litigation threats to extract attorneys' fees.[77] Almost as troubling are the "facts" that ADS's counsel attested to in his declaration in support of his proposed Rule 11 motion. ADS's counsel stated, as a fact, that

---

[75] (Appx20) (citing *Tate Access Floors v. Interface Architectural Res.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002) and *Nazomi Communications, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364, 1371 (Fed. Cir. 2005) ("this court cautions against the nonviable 'practicing the prior art' defense").

[76] (Appx704).

[77] See, e.g., *Wiley v. RockTenn CP, LLC*, No. 4:12-cv-00226 (E.D. Ark.), Order at 8, Sept. 30, 2014, ECF No. 102, at 14 (court denied defendant's motion for fees, in part because defendant had ''threatened to seek attorney fees from the beginning of [the] litigation'' and used ''the threat of fees to persuade Mr. Wiley to abandon all of his claims . . . .'').

"Plaintiff's counsel has been put on notice of multiple prior art references that would invalidate the patent-in-suit under Section 102 for lack of novelty."[78] ADS's counsel also stated, as a fact, "Plaintiff has engaged in a pattern of making nuisance settlement offers in an attempt to extort settlement payments which exploit the high cost of defending patent infringement litigations."[79] These statements are without basis and are untrue. With respect to prior art references, while it might be ADS's counsel's opinion that invalidating art exists, there is no way that counsel could legitimately attest to the statement, as a fact, that certain prior art "would invalidate the patent-in-suit." Outside of the courts or the USPTO, that determination is merely opinion. With respect to settlement offers, RCDI made other offers of settlement, but RCDI never tried to "extort" settlement payments. While RCDI recognizes that some defendants decided to settle based on an economic analysis, RCDI has never tied a proposed settlement offer to the cost of litigation. RCDI has never tried to strong-arm a defendant. Rather, RCDI has simply offered an early settlement solution to accommodate those defendants seeking early resolution. Some defendants accepted the offer and some entered into a settlement after negotiating terms. Others chose not to settle. Those types of discussions are common and do not amount to "extortion" as ADS's counsel stated

---

[78] (Appx704).
[79] (Appx704).

in his Declaration. The conduct by ADS's counsel in this litigation presumably weighed against a finding of attorneys' fees.[80]

VI. The District Court's Decision was not an Abuse of Discretion and was Proper Under *Octane Fitness*

ADS argues that the district court's decision is not supported by *Octane Fitness*. ADS says that: (1) the district court did not consider the weakness of RCDI's litigating position and (2) the district court improperly focused on RCDI's compliance with the safe harbor provision of Rule 11. RCDI submits that the district court absolutely followed *Octane Fitness* and properly exercised its discretion in denying ADS's bid for fees.

Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The Supreme Court clarified the scope of section 285, holding that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[81] District courts "may determine whether

---

[80] See, e.g., *Stragent*, WL 675304 *8 (Relying on *Octane*, *Fogerty*, and *Park-In-Theatres*, the court noted that "[t]he equitable force of bad conduct of the losing party may be diminished depending on the conduct of the winning party.")
[81] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."[82]

While no single element is dispositive, "predominant factors to be considered, though not exclusive, are those identified in *Brooks Furniture* [*Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005)]: bad faith litigation, objectively unreasonable positions, inequitable conduct before the [Patent and Trademark Office ("PTO")], litigation misconduct, and (in the case of an accused infringer) willful infringement."[83] Fee-shifting in patent cases originated in connection with a provision of the 1946 Patent Act, which stated that a district court "may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment in any patent case."[84] Even with this authority, courts exercised their discretion sparingly, "view[ing] the award of fees not 'as a penalty for failure to win a patent infringement suit,' but as appropriate 'only in

---

[82] *Id.*

[83] *Stragent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014) (Dyk, J.); see also *Octane*, 134 S. Ct. at 1756 n.6 ("[I]n determining whether to award fees under a similar provision in the Copyright Act, district courts could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"), quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994).

[84] *Octane*, 134 S. Ct. at 1753 (quoting 35 U.S.C. § 70 (1946)).

extraordinary circumstances.'"[85]  Fee awards were made "to address 'unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force," which made a case so unusual as to warrant fee-shifting."[86]

*Octane Fitness* explained that "the addition of the phrase 'exceptional cases in § 285,' was 'for purposes of clarification only.'"[87]  *Octane Fitness* concluded that until *Brooks Furniture*, courts correctly applied § 285 only in rare cases and "in a discretionary manner, assessing various factors to determine whether a given case was sufficiently 'exceptional' warrant a fee award" and considering "the totality of the circumstances."[88]

The Eastern District of Texas has discerned several guidelines from *Octane Fitness* that guide the court in determining whether to award fees.[89]  "First, awards of attorneys' fees in patent cases should be reserved for rare and unusual circumstances. . . ."[90]  The district court noted *Octane's* reliance on *Park-In-Theatres*:

---

[85] *Id*. at 1753 (quoting *Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)).

[86] *Id*. (quoting *Park-In-Theatres*, 190 F.2d at 142).

[87] *Octane*, 134 S. Ct. at 1753.

[88] *Id*. at 1753-54.

[89] See, Order and Opinion Denying Attorney's Fees, *Stargent, LLC v. Intel Corp*., No. 6:11-CV-421, 2014 WL 675304 (E.D. Tex. Aug. 6, 2014) (Dyk, J.).

[90] *Id*. at *5  (citing *Octane*, 134 S. Ct. at 1756) ("In 1952, when Congress used the word in § 285. . . '[e]xceptional' meant uncommon, rare, or not ordinary." (internal quotation marks omitted)).

[T]he payment of attorney's fees for the victor is not to be regarded as a penalty for failure to win a patent infringement suit. The exercise of discretion in favor of such an allowance should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear.[91]

Second, determining whether attorney fees should be awarded involves considering the totality of the circumstances.[92] The predominant factors that should be considered are those set out in *Brooks Furniture*, including bad faith litigation, objectively unreasonable positions, inequitable conduct before the PTO, litigation misconduct, and (in the case of an accused infringer) willful infringement.[93] "'A case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award.'"[94] The court cautioned, however, that

[t]he totality of the circumstances standard is not, however, an invitation to a "kitchen sink" approach where the prevailing party questions each argument and action of the losing party in an effort to secure attorney's fees. In adopting the totality of the circumstances approach, the Supreme Court did not intend to burden the district court with reviewing in detail each position and each action taken in the course of litigation by the losing party.[95]

---

[91] *Id*. at *5-6; (quoting *Park-In-Theatres*, 190 F.2d at 142).
[92] *Stragent*, WL 675304 *6.
[93] *Id*. (citing *Octane*, 134 S. Ct. at 1756).
[94] *Id*. (quoting *Octane*, 134 S. Ct. at 1757).
[95] *Id*.

Third, the mere fact that a party advances a losing argument is not relevant to a consideration of whether a case is "exceptional."[96] The focus is on arguments that were frivolous or made in bad faith.[97] "To impose fees on a party simply for making losing arguments would be the same in effect as fully adopting the English Rule, whereby the losing party always pays the winner's fees."[98]

Fourth, the losing party's conduct need not be independently sanctionable to justify an award of fees.[99]

Fifth, the statute is directed to exceptional "cases."[100] "The determination of whether attorney's fees are warranted under § 285 should be a determination of whether in light of the totality of the circumstances the case *as a whole* is exceptional."[101]

Sixth, the relevant considerations for an exceptional case determination may include the conduct of the prevailing party.[102] For example, if the prevailing party advanced arguments in bad faith or committed litigation misconduct, this may weigh against a finding of a fee award.[103] Relying on *Octane Fitness*, *Fogerty*, and

---

[96] *Stragent*, WL 675304 *6.
[97] *Id*. *6-7 (citing *Octane*, 134 S. Ct. at 1753 and *Octane's* reliance on *Park-In-Theatres*).
[98] *Id*. *7.
[99] *Id*. (citing *Octane*, 134 S. Ct. at 1756).
[100] *Id*.
[101] *Id*. (Emphasis in original).
[102] *Id*. *8.
[103] *Id*.

*Park-In-Theatres*, the court noted that "[t]he equitable force of bad conduct of the losing party may be diminished depending on the conduct of the winning party."[104]

In denying ADS's attorneys' fees, the district court acted properly under *Octane Fitness* and considered the totality of the circumstances. The district court's decision discusses *Octane Fitness* up front.[105] And, it is clear from both the hearing transcript and the district court's decision that the court fully considered all of the circumstances surrounding ADS's request for fees and did so in the context of the lessons that the Eastern District of Texas has learned from *Octane Fitness* as set forth in *Stragent*.

Contrary to ADS's assertions, the district court fully considered RCDI's litigation position. The court noted that all of ADS's arguments are focused on validity.[106] The court determined that RCDI's position in its briefing on the Section 101 issue was plausible.[107] And, the court also determined that RCDI had not acted unreasonably with respect to prior art references raised by ADS.[108] To the contrary, both the Section 101 argument and the arguments on Section 102 and 103 regarding prior art would have necessitated impermissible mini trials on those

---

[104] *Id.*
[105] (Appx16).
[106] (Appx18-19).
[107] (Appx19).
[108] (Appx18-19).

issue.[109]  Moreover, with respect to the alleged prior art under Sections 102 and 103, the district court aptly noted that those issues had not even been raised with the court.[110]

The district court also did not improperly focus on RCDI's compliance with the safe harbor provision of Rule 11.  The court certainly noted this fact in connection with the attorneys' fee issue, but it was in the context of acknowledging the short period of the litigation.[111]  The court also viewed RCDI's dismissal in response to the Rule 11 service as a factor that showed RCDI's litigation conduct was reasonable.[112]

ADS has offered no viable reason to support its position that the district court abused its discretion or erred in its decision under *Octane Fitness*.

## CONCLUSION

The district court fully considered all of the circumstances of this litigation and properly denied ADS's attorney's fees, and did so following the mandates of *Octane Fitness* and other applicable case law.  The district court did not abuse its discretion by declining to conduct a mini trial on the issue of validity.  ADS's Section 101 issue was fully briefed and the district court properly found that RCDI had plausible arguments in response.  The district court also considered the Section

---

[109] (Appx19-20).
[110] (Appx19-20).
[111] (Appx22).
[112] (Appx18).

102/103 issues raised by ADS, even though ADS failed to raise them with the court with a motion for summary judgment, and properly determined that RCDI's conduct was reasonable. Other issues raised by ADS at the district court and in its appeal brief are irrelevant to the issues ADS raises on appeal. In short, ADS has provided absolutely no basis on which it could be found that the district court abused its discretion. Finally, ADS's own questionable conduct should not be overlooked. For at least the foregoing reasons, this Court should affirm the district court's denial of ADS's fees.

Dated: December 5, 2016

Respectfully submitted,

/s/ Jay B. Johnson
Jay B. Johnson
Kizzia Johnson PLLC
1910 Pacific Ave., Suite 13000
Dallas, Texas 75201
(214) 451-0164
Fax: (214) 451-0165
jay@kjpllc.com
*Attorneys for Plaintiff - Appellee*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 5th day of December, 2016, I caused this Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Nathan Bailey
> WALLER LANSDEN DORTCH & DAVIS, LLP
> 511 Union Street, Suite 2700
> Nashville, Tennessee 37219
> (615) 244-6380
> nate.bailey@wallerlaw.com
>
> *Counsel for Appellant*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief of Appellee will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

/s/ Jay B. Johnson
*Counsel for Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*6,853*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: December 5, 2016            /s/ Jay B. Johnson
                                   *Counsel for Appellee*